UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| MICHELLE FISHER, | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CASE NO. |
| PLANNED PARENTHOOD OF | : | |
| NORTHERN, CENTRAL AND | : | |
| SOUTHERN NEW JERSEY, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COMPLAINT**

Plaintiff, Michelle Fisher, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to Title VII of the Civil Rights Act of 1964, as amended (hereinafter, "Title VII"), Section 1981 of the Civil Rights Act, as amended, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq., have been violated and avers as follows:

**I.    PARTIES**

1. Plaintiff, Michelle Fisher (hereinafter "Plaintiff" or "Ms. Fisher"), is an adult individual residing in Mount Laurel, NJ with a mailing address of 18 Naples Lane, Mount Laurel, NJ 08054.

2. Defendant, Planned Parenthood of Northern, Central and Southern New Jersey, Inc. (hereinafter ("Defendant") or ("Planned Parenthood")), is a corporate subsidiary of the Planned Parenthood Federation of America, Inc., with a principal place of business at 196 Speedwell Ave., Morristown, NJ 07960.

1

3. At all times material hereto, Defendant was Ms. Fisher's employer as defined under Title VII and the NJLAD.

4. At all times material hereto, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

5. Venue is properly laid in this district because the Defendant conducts business in this district and because a substantial part of the acts and omissions giving rise to the claims set forth herein occurred in this judicial district. 28 U.S.C. § 1391(b)(1) and (b)(2).

6. This Complaint alleges retaliation and discrimination on the basis of Ms. Fisher's race and complaints of racial discrimination, in violation of Title VII and the NJLAD.

7. This Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

8. Additionally, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction to hear all of Ms. Fisher's claims arising under New Jersey state law.

## II. FACTS

9. Defendant was Ms. Fisher's employer from September 24, 2018, until she was constructively discharged on June 1, 2021.

10. Defendant hired Ms. Fisher, a Black and Jamaican-American woman, to work as a Nurse Practitioner.

11. Believing that she had secured her "dream job," Ms. Fisher resigned from a job she enjoyed and took a pay-cut to join Planned Parenthood, fulfilling her long-time dream of serving divers populations and supporting women's reproductive health.

12. Almost immediately after she began working there, Ms. Fisher began to experience harassment and intimidation at the hands of then Center Manager for Defendant's Delran office, Angela Roberson.

13. Ms. Roberson directed Ms. Fisher to sign off on charts for days when she was out or was working at a different site. When Ms. Fisher objected to this procedure, Ms. Roberson threatened Ms. Fisher not to question anything and advised her that Ms. Roberson previously had another nurse practitioner fired for "asking questions."

14. Ms. Roberson did not provide any assistance to Ms. Fisher, despite being the manager, and did not allow Ms. Fisher to take lunch breaks.

15. Ms. Fisher complained about Ms. Roberson's conduct to at least two other managers, but to no avail.

16. On information and belief, some of Ms. Fisher's coworkers, who were also racial minorities, complained about Ms. Roberson, also to no avail.

17. Defendant took no action with regard to Ms. Roberson's conduct, despite the complaints from Ms. Fisher and her coworkers.

18. Approximately a year after Ms. Fisher began working for Defendant, a white nurse complained about Ms. Roberson. Defendant promptly responded to the white nurse's concerns, and terminated Ms. Roberson's employment.

19. Defendant's discriminatory conduct continued after Ms. Roberson's employment was terminated.

20. Susan Egbert, a white woman who was the Center Manager for the Bellmawr clinic, often made whip-cracking gestures directed at Ms. Fisher.

21. On one occasion, Ms. Egbert threw a used urine test at Ms. Fisher's desk while she was working and eating her lunch. The urine splashed onto Ms. Fisher's desk.

22. Ms. Fisher complained about Ms. Egbert to two other managers, Mellanie Woods and Margaret Ferrari, but no action was taken.

23. In or around January 2021, Ms. Fisher was informed she would have to change her hours. She noted that a younger, white employee in her same position, who was hired after Ms. Fisher, was not required to do this.

24. Ms. Fisher also observed that this same white employee was not forced to travel to work sites outside of her usual area, unlike Ms. Fisher.

25. When Ms. Fisher asked her VP, Christine Aquino, why her younger white colleague was not forced to travel outside of her area, Ms. Aquino responded that it was because Ms. Fisher was more "seasoned."

26. Ms. Fisher noticed, however, that this younger white colleague was paid exactly the same as Ms. Fisher, despite having less experience and less responsibility.

27. Despite the toxic atmosphere in which she found herself, Ms. Fisher continued to perform her job at all times with diligence, always meeting or exceeding Defendant's reasonable expectations, and conducting herself with the utmost respect to her patients and fellow employees.

28. On May 7, 2021, Ms. Fisher was advised that a patient from the previous day complained that Ms. Fisher did not perform a "PAP" test on her. Ms. Fisher had concluded that such test was unnecessary and would have been clinically irresponsible based on the patient's age and history.

29. After Ms. Fisher learned of the complaint, she conferred with Mellanie Woods and with Erica Tsakiris, the Lead Clinician for Defendant's southern sites. Ms. Tsakiris confirmed that Ms. Fisher's decision was appropriate, but Ms. Woods advised that Defendant's new policy was to "give [patients] whatever they want."

30. On or around May 10, 2021, Defendant placed Ms. Fisher on administrative leave, under the pretext that she had been "gossiping" about a patient.

31. Despite being on administrative leave, Ms. Fisher continued to make herself available by phone to assist her colleagues with patient consultations.

32. Without any further discussion, and without any opportunity to defend herself against the false allegations lodged against her, Ms. Fisher was informed on June 1, 2021, that her employment was terminated effective immediately, due to purported issues with her "performance."

33. At no point during her employment by Defendant was Ms. Fisher ever advised of a deficiency in her performance; however, Ms. Fisher is well aware that she was referred to as a "pain in the ass" by Ms. Aquino, a designation that was repeated by one of the managers, in reference to her complaints of unfair treatment.

34. Throughout Ms. Fisher's employment by Defendant, she noticed that different rules seemed to apply to white employees, as compared to non-white employees, and that white employees were not disciplined in the same manner, or for the same reasons, as non-white employees.

35. By the time Defendant terminated Ms. Fisher's employment, it also had terminated the employment of most or all other black clinicians at her primary work site, including the only black physician.

36. Defendant's sole motivation for terminating Ms. Fisher's employment was her race, national origin, and propensity to complain about discriminatory conduct.

37. On July 3, 2021, Ms. Fisher filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2021-03848, alleging racial discrimination based on her age and national origin due to the actions of Defendant, and dual filed with the New Jersey Division on Civil Rights ("NJDCR").

38. The EEOC issued to Ms. Fisher a Notice of Rights, which she received on February 16, 2022 (attached as "Exhibit A").

### III.     CAUSES OF ACTION

COUNT I
42 U.S.C. § 2000e-2(a)
TITLE VII – DISCRIMINATION

39. Ms. Fisher incorporates all the preceding paragraphs as if they were set forth at length herein.

40. Ms. Fisher's status as being Black places her in a protected class.

41. Ms. Fisher's status as being of Jamaican origin places her in a protected class.

42. Defendant took adverse action against Ms. Fisher by subjecting her to a hostile work environment throughout the time she was employed.

43. Defendant took adverse action against Ms. Fisher by assigning onerous responsibilities to her that were not assigned to her white counterparts.

44. Defendant took adverse action against Ms. Fisher with regard to her pay, in that she was required to travel extensively without being paid any more than her less-experienced white counterparts.

45. Defendant took adverse action against Ms. Fisher by placing her on administrative leave.

46. Defendant took adverse action against Ms. Fisher by terminating her employment.

47. Despite Ms. Fisher's complaints, no meaningful remedial action was taken with respect to the discrimination she experienced during her employment by Defendant.

48. Ms. Fisher's membership in a protected class was a motivating factor in Defendant's adverse actions against her, and any non-discriminatory explanation offered by Defendant is pretext.

49. As such, Defendant's decision to racially discriminate against Ms. Fisher is an unlawful employment practice under 42 U.S.C. § 2000e-2(a).

50. As a proximate result of Defendant's conduct, Ms. Fisher sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

51. As a result of the egregious conduct of Defendant's management, Ms. Fisher demands punitive damages.

52. Further, Ms. Fisher demands attorney's fees and court costs under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), et seq.

COUNT II
42 U.S.C. § 2000e-2(a)
TITLE VII – HARASSMENT

53. Ms. Fisher incorporates all of the preceding paragraphs as if they were set forth at length herein.

54. Ms. Fisher had to endure pervasive and regular harassment from several of her supervisors.

55. This harassment was motivated by Plaintiff's race and national origin.

56. The harassment by Ms. Fisher's supervisors detrimentally affected her quality of life, and would detrimentally affect a reasonable person's quality of life.

57. The harassment of Ms. Fisher by Defendant's employees was willful and intentional.

58. Despite Ms. Fisher's repeated complaints, no meaningful remedial action was taken with respect to the harassment.

59. This willful, intentional, and unlawful harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C. § 2000e, et seq.

60. As a proximate result of Defendant's conduct, Ms. Fisher sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

61. As a result of the conduct of Defendant's management, Ms. Fisher demands punitive damages.

62. Further, Ms. Fisher demands attorney's fees and court costs under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), et seq.

COUNT III
42 U.S.C. § 2000e-3(a)
TITLE VII – RETALIATION

63. Ms. Fisher incorporates all of the preceding paragraphs as if they were set forth at length herein.

64. As set forth above, Ms. Fisher made numerous complaints to Defendant regarding the racial discrimination she was experiencing, and as such Ms. Fisher was engaged in protected activity under Title VII of the Civil Rights Act.

65. Defendant took adverse action against Ms. Fisher, as set forth above.

66. As set forth above, Ms. Fisher's participation in protected activity was a motivating factor in Defendant's decision to take adverse actions against Ms. Fisher, including the termination of her employment.

67. As such, Defendant's actions were retaliatory, in violation of the Civil Rights Act of 1964, § 704(a).

68. As a proximate result of Defendant's conduct, Ms. Fisher sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

69. As a result of the conduct of Defendant, Ms. Fisher hereby demands punitive damages.

70. Pursuant to the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a), et seq., Ms. Fisher demands attorney's fees and court costs.

COUNT IV
42 U.S.C. § 1981
DISCRIMINATION, HARASSMENT, AND RETAILATION

71. Ms. Fisher incorporates all of the preceding paragraphs as if they were fully set forth at length herein.

72. Defendant took adverse action against Ms. Fisher through its harassment and racial discrimination of Ms. Fisher.

73. Ms. Fisher's membership in a protected class and engagement in protected activity were motivating factors in Defendant's decision to harass and discriminate against Ms. Fisher.

74. Ms. Fisher suffered disparate treatment by Defendant, as set forth above.

75. As set forth above, Ms. Fisher made complaints about discrimination and harassment in the workplace and, as such, Ms. Fisher was engaged in protected activity under Section 1981 of the Civil Rights Act.

76. Defendant took adverse actions against Ms. Fisher, as set forth above.

77. As set forth above, Ms. Fisher's participation in protected activity was a motivating factor in Defendant's adverse actions against her, including the termination of her employment.

78. As such, Defendant's actions constitute unlawful employment practices under 42 U.S.C. § 1981.

79. As a proximate result of Defendant's conduct, Ms. Fisher sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of earning power and capacity.

COUNT V
NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, *et seq.*
Discrimination And Harassment Based On Age, Race, and National Origin

80. Ms. Fisher incorporates all of the preceding paragraphs as if they were fully set forth at length herein.

81. At all times material hereto, and pursuant to the NJLAD, an employer may not discriminate against any employer based on race or national origin.

82. Defendant is a qualified employer and person within the definition of the NJLAD.

83. Based on the foregoing, Ms. Fisher alleges that Defendant violated the NJLAD by subjecting her to discrimination and harassment on the basis of her race and national origin.

84. Ms. Fisher further alleges that Defendant discriminated against her based on her age.

85. Ms. Fisher is a Black and Jamaican woman over the age of 40.

86. Ms. Fisher was treated far less favorably than her younger, non-black, non-Jamaican counterparts.

87. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

88. Pursuant to the NJLAD, Plaintiff demands attorney's fees and court costs.

## COUNT VI
NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1, *et seq.*
Retaliation

89. Ms. Fisher incorporates all of the preceding paragraphs as if they were fully set forth at length herein.

90. At all times material hereto, and pursuant to the NJLAD, an employer may not discriminate against any employer based on race or national origin.

91. Defendant is a qualified employer and person within the definition of the NJLAD.

92. During her employment by Defendant, Ms. Fisher made numerous complaints to managers about the negative and discriminatory treatment she was experiencing.

93. Defendant did not intervene to correct the discriminatory behaviors; instead, Defendant took adverse actions against Ms. Fisher.

94. Based on the foregoing, Ms. Fisher alleges that Defendant violated the NJLAD by retaliating against her for making complaints about the unlawful discrimination and harassment she experienced.

95. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

96. Pursuant to the NJLAD, Plaintiff demands attorney's fees and court costs.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Michelle Fisher, demands judgment in her favor and against the Defendant in an amount in excess of $150,000.00 together with:

    A.    Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

    B.    Punitive damages;

    C.    Attorney's fees and costs of suit;

    D.    Interest, delay damages; and,

    E.    Any other further relief this Honorable Court deems just, proper, and equitable.

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve any and all physical, electronic and/or digital information or data pertaining in any way to Plaintiff's employment, to Plaintiff's allegations, causes of action or defense to Plaintiff's allegations or causes of action as well as any and all evidence pertaining to any party or employee of any party, including but not limited to physical, electronic and/or digital data (electronically stored information), web pages, social media profiles, pages or identities, emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, back-up and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook, ACT!), electronic spreadsheet files and file fragments, related to this matter. This includes a request that such information not be modified, altered

or deleted as a result of data compression or disk fragmentation (or other optimizations procedures), which processes you are hereby directed to suspend until such time as that data can be preserved, copied and produced.

In terms of paper information, Defendants are directed to preserve any and all documents, whether in draft or final form, including contracts or agreements, emails, memos, handbooks (past and present), policies (past and present), employment files, pay stubs or duplicates, spreadsheets, lists, charts, reports, notes, correspondence, photographs, investigative information or other documents which pertain in any way to the controversy, parties or witnesses in this matter.

### **JURY DEMAND & TRIAL COUNSEL DESIGNATION**

Plaintiff hereby demands a trial by jury. Valerie C. Shore, Esquire, of the Law Offices of Eric A. Shore, is hereby designated trial counsel.

Date: May 17, 2022              **LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: *Valerie C. Shore*
**Valerie C. Shore, Esq.**
20 Brace Rd., Suite 325
Cherry Hill, NJ 08034
Tel.: (856) 433-6172
Fax: (856) 761-3025
Email: ValerieS@ericshore.com
*Attorney for Plaintiff*